# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 156 | **DATE** | August 15, 2002 |
| **CASE TITLE** | United Airlines v. Melissa Ewers and Assoc. of Flight Attendants | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]
Plaintiff's motion for summary judgment [23-1] is denied. Defendants' motion for summary judgment [25-1] is granted. Judgment on the arbitration award will be entered in favor of defendants. The parties should attempt to reach agreement on the form of a judgment order. A status hearing is set for September 18, 2002, at 10:30 a.m.
   The parties should file cross-memoranda regarding back pay by August 30, 2002 and be prepared to discuss it at the status hearing.
   Defendants' request for attorney's fees [ ] is denied. ENTER MEMORANDUM OPINION.

(X) [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices MAILED by judge's staff. | | | |
| | Notified counsel by telephone. | | AUG 19 2002 date docketed | |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | | 42 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to _____ | 02 AUG 16 AM 9:46 | 8/15/02 date mailed notice | |
| KAM | courtroom deputy's initials | FILED-ORD | KAM mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

(Reserved for use by the Court)

01-156.021-JCD                                              August 15, 2002

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED AIRLINES, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 01 C 156 |
| MELISSA EWERS and ASSOCIATION OF FLIGHT ATTENDANTS, AFL-CIO, | ) |
| Defendants. | ) |

**DOCKETED AUG 1 9 2002**

## MEMORANDUM OPINION AND ORDER

Before the court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, the court grants summary judgment in favor of defendants.

## BACKGROUND

Plaintiff United Airlines, Inc. ("United") brings this action under the Railway Labor Act (the "Labor Act"), 45 U.S.C. § 153 First (q), seeking review of an arbitration award rendered by the United Airlines Flight Attendant System Board of Adjustment in favor of defendants Melissa Ewers and her union, the Association of Flight Attendants, AFL-CIO (the "Union").[1] Defendants counterclaim to affirm the award, which ordered that Ewers' employment as a

---

[1] The Union is the exclusive bargaining representative for United flight attendants pursuant to the Labor Act, which governs labor relations in the airline industry.



United flight attendant be reinstated, with full back pay and benefits owed from the date of Ewers' termination.

The relevant facts are not in dispute. Melissa Ewers began her employment as a United flight attendant in 1989. In November 1995, she was terminated from her job for multiple violations of United's Articles of Conduct, including excessive absenteeism, falsely claiming paid leave, and using abusive language. On February 27, 1996, Ewers and representatives of both United and the Union met with a mediator to attempt to resolve their dispute over Ewers' discharge. The parties reached a Mediation Settlement Agreement ("MSA"), which was a "last chance agreement" that reinstated Ewers' employment (without back pay but with full seniority), but provided that she would be terminated if she did not comply with specific conditions set forth in the MSA. The MSA stated in part:

> The parties agree that if Ms. Ewers has three dependability infractions of any kind within a rolling twelve month period, she shall be terminated. Dependability infractions include:
>
> > Late check-in
> > Missed trip
> > Sick leave
> > Occupational injury with sick leave
> > Unavailable on reserve
> > Missed training
> > Missed meeting
>
> Any arbitrator reviewing Ms. Ewers' termination shall have no jurisdiction over the penalty and may only determine whether or not the three infractions occurred.

(Plaintiff's Appendix, Ex. 2, MSA, at 1-2.) Pursuant to the MSA, a United supervisor later met with Ewers for a return-to-work conference before she was reinstated, and they reviewed the terms of the MSA. Ewers returned to work on March 6, 1996. For the first year following her reinstatement, Ewers complied with the MSA and had a perfect attendance record.

In late March 1997, Ewers used three days of sick leave. After Ewers returned to work, she met with a United supervisor for a work history review to ensure that she understood that she had committed a dependability infraction. On June 6, 1997, Ewers missed a flight. The next day, her supervisor contacted her to discuss the circumstances of the missed trip and to make sure Ewers knew this was her second infraction. On August 10, 1997, Ewers used sick leave. Her supervisor told her that this was the third dependability infraction within a rolling twelve-month period. Accordingly, on August 18, 1997, United issued Ewers a Letter of Charge stating that she was charged with "failure to fulfill [her] responsibilities as a flight attendant" because she had committed three infractions in twelve months.

United and the Union are parties to a collective bargaining agreement (the "CBA") that sets forth the pay, rules, and working conditions for United flight attendants. Section 26 of the CBA provides a grievance procedure for resolving flight attendants' contractual and disciplinary disputes. In accordance with Section

26, a hearing was held at which Ewers was represented by the Union. Thereafter, in late September 1997, United issued Ewers a Letter of Discharge and terminated her employment, finding that she had committed three dependability infractions in twelve months, in violation of the MSA.

Pursuant to the CBA, the Union appealed United's decision to discharge Ewers to the United Airlines Flight Attendant System Board of Adjustment (the "Board"). The Board has exclusive jurisdiction over all disputes submitted to it by United, an employee, or the Union President, provided that certain procedures have been followed. The Board consists of two members selected by the Union and two selected by United. The CBA also provides for the selection of a neutral arbitrator to act at all hearings conducted by the Board. Under the CBA, decisions of the Board "in all cases properly referable to it" are final and binding on the parties. (Defendants' Statement of Material Facts, ¶ 7.)

The Union argued on appeal that United's decision to terminate Ewers was not based on just cause and that it violated the CBA. On January 24, 2000, the Board, which consisted of two Union appointees, two United appointees, and neutral Arbitrator Edna Francis, held a hearing. At the hearing, the parties made arguments, presented witnesses, had the opportunity to cross-examine witnesses, and submitted exhibits. Ewers was represented by her father, Willis Brown. Brown stated that Ewers did not

dispute that the infractions occurred, but argued that termination was too severe a penalty and that Ewers' good work performance should be taken into account. (Plaintiff's Appendix, Ex. 1, Transcript of Arbitration Hearing, at 14-16, 94-96.) Brown did not contend that the infractions never occurred or that the MSA was invalid. United's position was that, according to the terms of the MSA, the only question before the Board was whether three dependability infractions occurred.

On September 26, 2000, Arbitrator Francis issued her Opinion and Award, finding that although Ewers had three "occurrences of absence" during a twelve-month period, only the missed flight constituted a "dependability infraction." (Plaintiff's Appendix, Ex. 3, Opinion, at 16-17.) Therefore, the Arbitrator ordered that Ewers be reinstated with full back pay and benefits owed from the date of Ewers' termination. The two Union-appointed Board members concurred; two United-appointed Board members dissented and filed a separate opinion.

In January 2001, United filed the instant action seeking review of the award and requesting that it be vacated. United contends that the Board's award was in excess of its jurisdiction and failed to comply with the Labor Act because the Board ignored the language of the MSA and considered issues that had not been raised by either party at the arbitration hearing or in proceedings prior to the hearing. United also contends that the Board's

consideration of such issues violated United's right to due process. Defendants have filed a counterclaim to enforce the award because United has not reinstated Ewers' employment or awarded her back pay in accordance with the Board's award. Defendants also request that we award Ewers back pay and any benefits owed Ewers from the date of the Board's Opinion and Award, and attorney's fees.

The parties now cross-move for summary judgment.

## **DISCUSSION**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Talanda v. KFC Nat'l Management Co., 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court will enter summary judgment against a party who does not "come forward with evidence

that would reasonably permit the finder of fact to find in [its] favor on a material question." McGrath v. Gillis, 44 F.3d 567, 569 (7th Cir. 1995).

Judicial review of arbitral awards is extremely limited. A federal court has jurisdiction to review the Board's decision only when it is asserted that (1) the Board failed to comply with the requirements of the Labor Act; (2) the Board failed to confine itself to matters within its own jurisdiction; (3) the Board or one of its members engaged in fraud or corruption; or (4) a party was denied due process. See 45 U.S.C. § 153 First (q); Pokuta v. Trans World Airlines, Inc., 191 F.3d 834, 839 (7th Cir. 1999). United's objections to the Board's decision fall within categories (1), (2), and (4).

To remain within the scope of its jurisdiction, the essence of the Board's decision must be contained in the terms of the governing agreement. See Lyons v. Norfolk & W. Ry. Co., 163 F.3d 466, 469 (7th Cir. 1999). In other words, the Board's decision must be based on the provisions of the MSA. The Seventh Circuit has held that "'a party can complain if the arbitrators don't interpret the contract . . . [or] if they disregard the contract.'" Id. (quoting Hill v. Norfolk & W. Ry. Co., 814 F.2d 1192, 1195 (7th Cir. 1987). Therefore, our focus as a reviewing court is not whether the arbitrator's decision was erroneous or misinterpreted the agreement, but rather whether it ignored the very language of

the agreement itself. See id. at 470; Anheuser-Busch, Inc. v. Local Union No. 744, 280 F.3d 1133, 1137 (7th Cir. 2002). In Tootsie Roll Industries v. Local Union No. 1, 832 F.2d 81, 83 (7th Cir. 1987), the Seventh Circuit stated as follows:

> "[T]he arbitrator's decision should not be upset unless it is arbitrary or capricious or fails to draw its essence from the collective bargaining contract because it exceeds the confines of interpreting and applying the contract" . . . . "[I]t is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to 'draw its essence from the collective bargaining agreement.'"

Id. (quoting Burkart Randall v. Lodge No. 1076, 648 F.2d 462, 465 (7th Cir. 1981) and Ethyl Corp. v. United Steelworkers of Am., 768 F.2d 180, 184-85 (7th Cir. 1985)).

In rendering its decision in this case, the Board recognized that the arbitrator's role "when called upon to determine the propriety of a discharge stemming from an alleged violation of the last chance agreement, is generally confined (a) to determining whether the circumstance or circumstances which the parties themselves have determined to be cause for discharge are present and (b) giving effect to the last chance agreement if such circumstances are present." (Opinion and Award at 12-13.) Thus, the Board defined its "mission" as "limited to determining if [Ewers] incurred three 'dependability infractions' within a rolling twelve-month period and if so, giving effect to the established

...

terms of the MSA regarding the consequences for such circumstances, i.e., sustaining the discharge of the grievant." (Id. at 13.)

The Board's opinion stated, in relevant part:

> The record here establishes that the grievant had three occurrences of absence during a rolling twelve-month period, following achievement of a perfect attendance record during the first twelve-month period of the MSA. The first occasion of absence was caused by illness. The second occasion of absence was caused by negligence. The third occasion of absence was caused by medication-induced illness which led the grievant to place herself on sick leave rather than remain at work. However, despite the Company's decision to discharge the grievant after the third occurrence of absence, whether each of those occurrences of absence must be characterized as a "dependability infraction" is not answerable from the content of the MSA or from any evidence in the record.
>     To state, as the MSA does, that the term "dependability infraction" *includes* absences attributable to certain causes or categories is not to define the term "dependability infraction" as a single occurrence of absence of the kind specified, regardless of cause or circumstance. The MSA itself is ambiguous regarding the meaning of "dependability infraction" and contains no language which compels the conclusion that the grievant knew that a single occurrence of absence, regardless of cause or circumstance, was to be regarded as a "dependability infraction." The parties to the MSA gave the grievant the right to appeal to the System Board of Adjustment and invested the Board with the jurisdiction to determine whether the grievant had incurred three "dependability infractions." If the parties to the MSA had intended any occurrence of absence to constitute a "dependability infraction," the question which naturally arises is why they did not simply use that simple language and why any resort to the System Board of Adjustment would be necessary, i.e., why the parties would assign the Board the mere perfunctory task of counting whether the grievant had incurred three incidences of absence within a rolling twelve-month period. The parties' inclusion of such a provision challenges the notion that the sole determinant of the grievant's right to continued employment under the MSA was the number of instances of absence within a rolling twelve-month period. Rather, the inclusion of the appeal

provision suggests that the parties expected an element of judgment to be involved in management's determination of whether a "dependability infraction" had occurred and that the parties accordingly did not intend the Board to serve the mere ministerial function of counting instances of absence.

No one who was a percipient witness to the negotiations leading to the MSA or to the drafting of it testified at the arbitration hearing regarding the content of the parties' discussions, regarding who wrote the agreement, or regarding any of the other factors which typically can and do play some role in contract interpretation. While Company witnesses testified that the grievant understood the agreement and knew that any occurrence of absence was synonymous with a "dependability infraction," the testimony each gave to support that conclusion is not persuasive on that point. For example, in the absence of clear language in the agreement, it is not reasonable to equate the grievant's statement that she "would never again be undependable" to an admission that she had agreed or understood that every single occurrence of absence regardless of circumstances or cause would constitute a "dependability infraction." It is also not reasonable to assume that the grievant must have understood that placing herself on sick leave when a reaction to medication make her too ill to safely fly would constitute a "dependability infraction." In the absence of such clear language, it is more reasonable to assume that the rule applicable to the making of every valid contract--i.e. a valid contract requires "consideration" for the bargain--was an inherent part of the parties' negotiations process in this case. Thus, the grievant's "gaining" the right to return to work, but under terms practically impossible to meet would hardly constitute "consideration." In the absence of express language to the contrary, the agreement must be interpreted in a way which shows consideration, rather than in a way which shows an illusory bargain on the grievant's behalf.

In the absence of any competent, direct evidence that "dependability infraction" was to be equated with "a single occurrence of absence" within the categories set forth regardless of circumstance--a deficiency of evidence which must be construed against the party bearing the burden of proof--management was required to exercise judgment and sound discretion in determining whether an occurrence of absence constituted an infraction bearing on the grievant's dependability.

> <u>Based solely upon the evidence of record</u> and exercising its jurisdiction to determine the only issue placed before it, the Board finds that, among the occurrences of absence which the Company cited as grounds for discharge, only the grievant's absence on June 6, 1997, attributable to the grievant's negligence, constitutes a "dependability infraction" and that the grievant, therefore, did not incur three "dependability infractions" within a rolling twelve-month period. Accordingly, the grievance is sustained and the discharge set aside.

(<u>Id.</u> at 13-17.)

United's first argument is that the Board failed to comply with the Labor Act and exceeded its jurisdiction by "deliberately ignor[ing] the MSA's express definition of 'dependability infraction.'" (Plaintiff's Memorandum at 7.) United contends that the Board ignored the "express language" of the MSA because the language did not "allow the [Board] to pick and choose which incidents of sick leave it believes should be considered infractions; all sick leave is counted as a dependability infraction." (<u>Id.</u> at 8.)

We are unpersuaded. Although the MSA specified that a "dependability infraction" would include certain types of absences, we believe (as the Board did) that the phrase is ambiguous; it was not expressly defined. "Infraction" is a term that was subject to the interpretation that fault was required.[2] There was no evidence presented to the Board as to what the parties to the MSA said, or

---

[2] The word "infraction" is defined as "the act of breaking or violating." <u>Webster's Third New International Dictionary</u> 1161 (1971).

about their understanding of the MSA (and specifically the phrase "dependability infraction"), at the time they entered into it. There was no evidence regarding whether the phrase "dependability infraction" was a term of art in the industry or at United, and, if so, whether it did or did not imply fault. United contends that the Board's "jurisdiction was limited to determining whether three absences occurred" (Plaintiff's Memorandum at 13), but this is incorrect. The MSA stated that the Board would have jurisdiction to "determine whether or not the three [dependability] infractions occurred." This jurisdiction inherently encompasses jurisdiction to interpret the term "infraction" where it is ambiguous, as it is here. The Board construed the phrase to require fault, and we are unable to substitute our judgment for that of the Board. See ANR Advance Transp. Co. v. International Bhd. of Teamsters, Local 710, 153 F.3d 774, 778 (7th Cir. 1998) ("[O]ur role is not to substitute our judgment for the arbitrator or even to determine that the arbitration was legally or factually in error; instead, we must limit our inquiry to whether the arbitrator reached his decision through an interpretation of the [governing agreement].")

United contends that the Board also exceeded its jurisdiction by "considering issues outside its limited jurisdiction under the MSA." (Plaintiff's Memorandum at 9.) United maintains that the Board examined the MSA's validity, including whether there was adequate consideration, and whether it was possible for Ewers to

meet the requirements of the MSA. It is clear, however, that the Board addressed these issues in the context of its analysis of the meaning of the phrase "dependability infraction," (Opinion and Award at 16), and the Board had jurisdiction to interpret that ambiguous phrase.

United also argues that the Board exceeded its jurisdiction "by applying its own opinion about the fairness and reasonableness of the MSA." (Plaintiff's Memorandum at 9.) On the contrary, the Board recognized that its "mission" was "limited to determining if [Ewers] incurred three 'dependability infractions' within a rolling twelve-month period and if so, giving effect to . . . [her] discharge." (Opinion and Award at 13.) The Board did not analyze the MSA's fairness or reasonableness; it simply construed the ambiguous term "dependability infraction."

Finally, United contends that the Board's award violated United's right to due process because the Board "based its award on arguments that were never raised by either party and to which United never had an opportunity to address." (Plaintiff's Memorandum at 12.) This argument appears to be no more than sour grapes. The Board's decision was based on a finding that the term "dependability infraction" was ambiguous and an interpretation of that term in light of the absence of evidence regarding the parties' understanding at the time of the MSA of what that term meant. Because of the express provision of the MSA that the Board

had jurisdiction to determine whether three "infractions" occurred, United had ample notice that the term "dependability infraction" was at issue. United presented evidence regarding Melissa Ewers' understanding of the MSA--but not of the term specifically or her understanding at the time the MSA was entered into. United was not denied the opportunity to present evidence regarding the meaning of the term "dependability infraction"; it simply failed to do so. As defendants point out, United was able to present witnesses, cross-examine witnesses, submit documentary evidence, and make oral argument. Accordingly, United was not denied due process.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is denied. Defendants' motion for summary judgment is granted. Judgment on the arbitration award will be entered in favor of defendants. The parties should attempt to reach agreement on the form of a judgment order. A status hearing is set for September 18, 2002, at 10:30 a.m.

Defendants have asked that Ewers be awarded back pay and any other monetary benefits owed by United from the date Ewers would have resumed her employment pursuant to the Board's award, but we have a question as to whether there is any issue regarding mitigation of damages. The parties should file cross-memoranda on this topic by August 30, 2002 and be prepared to discuss it at the status hearing.

Defendants have also asked for attorney's fees and costs. The Seventh Circuit has previously required the losing party in labor arbitration cases to pay reasonable attorney's fees and costs incurred by its opponent when the arguments it has advanced are frivolous and/or vexatious. See Alberici-Eby v. Local 520, Int'l Union of Operating Eng'rs, 992 F.2d 727, 734 (7th Cir. 1993). The prevailing party is entitled to such fees "only if his opponent's suit or defense was frivolous, which our cases define to mean brought in bad faith--brought to harass rather than to win." Local 879, Allied Indus. Workers of Am. v. Chrysler Marine Corp., 819 F.2d 786, 791 (7th Cir. 1987). Although we have rejected United's position, we do not think it can fairly be regarded as frivolous or vexatious, and accordingly we deny defendants' request for attorney's fees. Defendants will, of course, be entitled to recover the ordinary costs of the action pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920.

DATE:         August 15, 2002

ENTER:        _____
              John F. Grady, United States District Judge